# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

KENNETH HARPER,                )
    Plaintiff,               )
                             )
v.                             )        CAUSE NO.: 2:08-CV-110-PRC
                             )
C.R. ENGLAND, INC.,            )
    Defendant.               )

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment [DE 34], filed by the Defendant, C.R. England, Inc., on December 15, 2010. For the following reasons, the Motion is GRANTED.

## PROCEDURAL BACKGROUND

On August 31, 2007, Plaintiff Kenneth Harper filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant C.R. England, Inc., alleging racial discrimination. On January 4, 2008, the EEOC issued a Dismissal and Notice of Rights, after conducting its own independent investigation.

On March 6, 2008, Plaintiff filed a Complaint in Porter County Superior Court against Defendant, alleging racial discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and 42 U.S.C. §1981, and retaliation for filing a worker's compensation claim in violation of Indiana law. On April 10, 2008, Defendant removed the case to this Court, and filed an answer on April 17, 2008. On December 15, 2010, Defendant filed the instant Motion for Summary Judgment. Plaintiff filed his response on March 10, 2011, and Defendant filed its reply on March 24, 2011.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. §636(c).

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. When the nonmoving party would have the burden of proof

at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Celotex*, 477 U.S. at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (quoting Fed. R. Civ. P. 56(e)).

In viewing the facts presented on a motion for summary judgment, a court must construe all

facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50.

## FACTUAL BACKGROUND

Plaintiff Kenneth Harper was an employee of Defendant C.R. England, Inc., a corporation operating a truck driving school in Burns Harbor, Indiana. Harper, an African-American, worked as a driving instructor for Defendant from June 2005 until his termination on August 3, 2007.

Lead Instructor Eric Metzler, also an African-American, was the immediate supervisor of Plaintiff and other instructors at the driving school. Metzler conducted daily meetings with the instructors in the mornings. Before each meeting the instructors, while waiting for the meeting to start, would talk and joke around with each other.

Plaintiff alleges that on March 9, 2007, another instructor, Darnell Humphry, an African-American, called Plaintiff a "mark ass nigger" during the time when instructors were waiting on the daily morning meeting to start. Metzler was not in the room when the incident occurred, but came into the room shortly afterward and said something like "cut it out" or "you guys quit it."

A few days after the incident, Plaintiff complained about it to another of his supervisors, school director Chris Kelsey. On April 18, 2007, Plaintiff emailed Carrie Johansen, the Assistant Director of Human Resources for Defendant, with a formal statement regarding the March 9 incident.

Kelsey met with Metzler, who denied hearing Humphrey's insult, and ordered Metzler to investigate the incident. Metzler interviewed several people who were present at the time of the exchange between Plaintiff and Humphrey, and reported to Kelsey that he was unable to determine what, if anything, Humphrey had actually said to Plaintiff. There was no record put in Humphrey's file concerning the allegations against him. Kelsey told Metzler, Humphrey, and Plaintiff that any future uses of a racial epithet would constitute a firing offense and publicly warned all the instructors that making a racial slur would lead to termination. In his deposition, Plaintiff testified that Metzler told him nothing would come of his complaint advised him to grow a thicker skin.

On approximately four or five occasions after March 9, 2007, Plaintiff says he heard other instructors use the slur "nigger" in conversations amongst themselves. The remarks were not directed at him, and Metzler was not part of the conversations.

Plaintiff alleged that the word "asshole" was written on his time card at some point after March 9, 2007. Plaintiff complained to Kelsey, who said he would talk to Metzler about it. Metzler moved the time clock and time cards into his office.

On June 25, 2007, Metzler gave three written warnings to Plaintiff. The most serious warning was for Plaintiff's poor attendance. Metzler told Plaintiff that he had taken too much time off, and warned him not to take any more days off or leave work early for the remainder of the year. Plaintiff understood that he was being placed on probation, and that if there was no improvement he could be terminated. Harper took several days off after being placed on probation. On July 10, 2007, Plaintiff emailed Johansen indicating that he believed the written warnings were unwarranted.

On or around July 13, 2007, Plaintiff initiated a "First Report of Injury or Illness," prepared by the Manager of Workers Compensation. However, Plaintiff never filed a worker's compensation

claim.

On August 3, 2007, Plaintiff was terminated. Before terminating Plaintiff, Kelsey consulted with Johansen regarding Plaintiff's attendance records. Johansen verified that Plaintiff had exceeded his leave and agreed that termination based on attendance was warranted. On August 3, 2007, Kelsey met with Plaintiff and told him he was being terminated for poor attendance. Kelsey prepared a written Termination Evaluation Form that indicated as the explanation of termination: "has not been able to do job full time."

## ANALYSIS

### A.    Hostile Work Environment

First, Defendant argues that the Court should grant summary judgment on Counts I and III, Plaintiff's claims for racial harassment and discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.,* and 42 U.S.C. §1981. Defendant argues that the alleged harassment was not so severe or pervasive as to create a hostile or abusive work environment. The same analysis applies to all of Plaintiff's claims under both §1981 and Title VII "[b]ecause [plaintiff] does not differentiate the operative facts based upon the statute invoked, and because the elements of his claims and the methods of proof are essentially identical under either statute." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (citing *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009)).

"A hostile environment is one that is 'permeated with discriminatory intimidation, ridicule and insult.'" *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004) (quoting *Shanoff v. Ill. Dep't. of Human Servs.*, 258 F.3d 696, 704 (7th Cir.2001)). In order to succeed on a claim for hostile work environment, Plaintiff must demonstrate that  "(1) he was subject to unwelcome

harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability." *Williams v. Waste Mgmt. of Ill., Inc*, 361 F.3d 1021, 1029 (7th Cir. 2004) (citations omitted). "To prevail on a hostile environment claim, the plaintiff must show that the work environment was both subjectively and objectively hostile." *Haugerud v. Amery School Dist.*, 259 F.3d 678, 693 (7th Cir. 2001) (citations omitted). "An objectively hostile work environment is one that a reasonable person would find hostile or abusive." *Id.* (citations omitted).

Plaintiff argues that several actions constituted unwelcome harassment based on race. First, he points to the specific racial insult directed at him by Humphrey, coupled with his overhearing of the word "nigger" in other conversations. Defendant does not disagree that the use of the racial epithet as insult was an instance of unwelcome harassment based on his race. Defendant argues that the harassment did not alter the conditions of Plaintiff's work environment by creating a hostile or abusive situation. Plaintiff also argues that Defendant's inadequate response to Plaintiff's complaints about the racial harassment and the response of his immediate supervisor also constituted racial harassment that created a hostile work environment. Defendant argues that the comments of Metzler, Plaintiff's supervisor, do not rise to the level of a hostile environment or abusive situation, and that there is no basis for employer liability.

In order to determine whether the work environment rises to the level of objectively hostile or abusive, the Court "must consider the totality of the circumstances, including 'the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"

*Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)) (citing *Shanoff*, 258 F.3d at 704). "Not every unpleasant workplace is a hostile environment. . . . The workplace that is actionable is the one that is hellish." *Perry v. Harris Chernin, Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997) (quotations omitted); *see also Wyninger v. New Venture Gear, Inc*., 361 F.3d 965, 977 (7th Cir. 2004) (same).

In this case, Plaintiff does not allege that he was physically threatened by any conduct. First, he argues that the use of the racial epithet "nigger" created an abusive work environment. However, the word was only directed at him once, and he only overheard it a handful of other times, without knowing the context of the overheard conversations. Defendant agrees that the term is racial harassment, but argues that neither the single use of the term as a direct insult nor Plaintiff's occasional overhearing of it in others' conversations create a hostile work environment. Although the use of the term is offensive, it was infrequent, and only directed at Plaintiff once.

The use of the term "nigger" by a supervisor, even if infrequently, can create an abusive work environment. *See Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993). In this instance, however, the insult was directed at Plaintiff by a co-worker. There are some circumstances where a single act by a co-worker can create an abusive or hostile work environment, *see, e.g., Smith v. Sheahan*, 189 F.3d 529, 534 (7th Cir. 1999) ("In a sex discrimination case, . . . damaging [the plaintiff's] wrist to the point that surgery was required, because she was a woman, easily qualifies as a severe enough isolated occurrence to alter the conditions of her employment."), but "[t]he mere utterance of an epithet which engenders offensive feelings in a employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris*, 510 U.S. at 21 (internal quotations omitted). The single insult by a co-worker in this case does not rise to the level

of an abusive work environment or alter the conditions of Plaintiff's employment.  *See, e.g., Thomas v. Fairfield Mfg. Co., Inc.*, No. 4:07-CV-56, 2009 WL 1043959, at *11 (N.D. Ind. Apr. 17, 2009) (racial comments made months apart, with only one directed at Plaintiff, held to be "isolated utterances that are neither severe or pervasive enough to create a hostile and abusive working environment"); *cf. Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir.2004) (evidence of objective hostility where plaintiff "was repeatedly subjected to hearing the word 'nigger,' including more than one occasion in which a fellow supervisor suggested that he talk to an employee 'nigger to nigger'").

Likewise, "[t]here is no hostile work environment where the harassment about which [plaintiff] complains was not directed at h[im]." *Smith v. Ne. Ill. Univ.*, 388 F.3d 559, 567 (7th Cir. 2004); *see also McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 567 (7th Cir. 2000) (even repeated use of the word "nigger" by a co-worker did not create a hostile work environment when they were not directed at the plaintiff); *Gleason v. Mesirow Fin.*, 118 F.3d 1134, 1144 (7th Cir. 1997) ("the impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff") (citation omitted).  In this case, Plaintiff only alleges that he overheard the term "nigger" a few times, but he does not know the names or the races of the people using the term, and does not allege knowledge of racial animus motivating its use.  "Because occasional use of racial epithets by coworkers not motivated by racial animus does not create a hostile environment, [plaintiff's] undetailed claims of coworker slurs are insufficient to allege a hostile environment."  *Walls v. Turano Baking Co.*, 221 F. Supp. 2d 924, 931 (N.D. Ill. 2002) (citing *McPhaul*, 226 F.3d at 567).  Plaintiff cannot survive summary judgment on his claims that the racial slur, either directed at him as an insult or overheard in conversation, constituted a hostile work environment.

Plaintiff also argues that the response to his complaints about being insulted by Humphrey created a hostile work environment. In particular, he argues that the inadequate investigation and Metzler's comments, including his statements that Plaintiff should "grow a thicker skin" and that nothing would be done about Plaintiff's complaint, created a hostile work environment. Defendant argues that harassment must be based on Plaintiff's protected status to be actionable, and Metzler's actions do not have a racial component.

"The complained of conduct must have either a sexual or racial character *or purpose* to support a Title VII claim." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (emphasis in original) (citing *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1308 (7th Cir. 1989)). Even assuming, viewing the facts in the light most favorable to Plaintiff, that Metzler's comments were intended as derogatory or insulting toward Plaintiff, the comments do not have a racial character or clear racial animus.[1] "Although a plaintiff does not need to identify an explicitly racial dimension of the challenged conduct to sustain a Title VII claim, []he must be able to attribute a racial 'character or purpose' to it." *Vance v. Ball State Univ.*, No. 08-3568, 2011 WL 2162900, at *6, 2011 U.S. App. LEXIS 11195, at *17-18 (7th Cir. June 3, 2011). Plaintiff's mere allegations about Metzler's comments and behavior during the investigation are insufficient. "'Title VII is not a general bad acts statute; it only addresses discrimination on the basis of race, sex, religion, and national origin. . .' This concern causes the court to require a substantial preliminary showing when one black person alleges discrimination by another black person," as here. *Hansborough v. Elkhart*

---

[1] The Court notes that many courts have explicitly described the need for employees to have "thick skins," without considering themselves to be insulting anyone. *See, e.g., Marrero v. Goya of Puerto Rico, Inc.,* 304 F.3d 7, 19 (1st Cir.2002) ("The workplace is not a cocoon, and those who labor in it are expected to have reasonably thick skins.") (quoting *Suarez v. Pueblo Int'l, Inc.*, 229 F.3d 49, 54 (1st Cir.2000)); *Nevarez v. TN Trailers, LLC,* No.1:04cv486, 2006 WL 1128651, at *10 (N.D.Ind. April 26, 2006) (same).

*Parks & Rec. Dep't*, 802 F. Supp. 199, 207 (N.D. Ind. 1992) (quoting *Hughes v. Derwinski*, 967 F.2d 1168, 1173 (7th Cir. 1992)) (other citations omitted). No such substantial preliminary showing has been made in this case. Even viewing the facts in the light most favorable to Plaintiff, he does not make *any* showing that Metzler's comments or actions were motivated by racial animus.

Plaintiff also appears to be arguing that the investigation of the alleged harassment was, in itself, creation of a hostile work environment, but he includes no law in support of his argument. To the extent that he is arguing that Metzler's comments and behavior during the investigation was harassing, the argument is addressed above. To the extent that he is arguing that Defendant's investigation was negligent, "an "employer is liable for a hostile work environment created by the employee's coworkers . . . only when the employee shows that his employer has 'been negligent either in discovering or remedying the harassment.'" *Mason v. Southern Ill. Univ. at Carbondale*, 233 F.3d 1036, 1043 (7th Cir. 2000) (quoting *Parkins v. Civil Constructors of Ill., Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998)). As described above, Plaintiff has not established that there was a hostile work environment. Plaintiff also cannot show that Defendant's discovery or remedy of the harassment was negligent.

In this case, Kelsey, the director and ultimate supervisor of all the instructors, met with Plaintiff and Metzler, Plaintiff's immediate supervisor, and initiated an investigation into Plaintiff's claim. At multiple meetings with all of the instructors, Metzler warned them that making a racial slur was a fireable offense, and he repeated the same warning to Humphrey in a private meeting. Neither Humphrey nor any other worker used a racial epithet to insult Plaintiff again. "Title VII requires only that the employer take steps reasonably likely to stop the harassment. . . [and] [t]here is no question that a stoppage of harassment shows effectiveness." *Porter v. Erie Foods Int'l, Inc.*,

576 F.3d 629, 637 (7th Cir. 2009) (quotations and citations omitted). Plaintiff did not report being the target of any further racial insults or other racial harassment. Accordingly, the Court concludes that, to the extent that there were instances of racial harassment, Defendant "employer took prompt and appropriate remedial action. No more was required – indeed nothing was required, if as [the Court] believe[s] (it is the alternative ground for [this] decision) [the supervisor]'s behavior did not even reach the threshold at which it could reasonably be thought to create a hostile working environment for the plaintiff." *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 432 (7th Cir. 1995) (quotations and citations omitted).

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claims for racial harassment that created a hostile work environment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq.,* and 42 U.S.C. §1981, in Counts I and III of the Complaint.

**B.      Retaliation**

Defendant argues Plaintiff cannot meet his burden to establish a *prima facie* case for race-based retaliation and should therefore be granted summary judgment on Counts II, IV and VI of the Complaint. Plaintiff contends that Defendant retaliated against him for reporting what he believed to be unlawful racial harassment.

Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by" the Act. 42 U.S.C. §2000e-3(a). The same analysis applies to Plaintiff's § 1981 claims for retaliation, and the claims are therefore analyzed together. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007). "An employee can establish a prima facie case of retaliation by proceeding under either the direct or indirect method." *Roney v. Ill. DOT*, 474 F.3d

455, 459 (7th Cir. 2007) (citation omitted).  "Under the direct method, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by the employer; and (3) there was a causal connection between the two." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (quotations omitted).  "In the absence of direct evidence (or, evidence that establishes the proposition without resort to inferences from circumstantial evidence),  a plaintiff can succeed under the direct method by presenting sufficient circumstantial evidence such that a jury could infer retaliation." *Derosena v. Gen. Bd. of Pensions & Health Benefits of United Methodist Church, Inc.*, 560 F. Supp. 2d 652, 669 (N.D. Ill. 2008) (citation omitted).  Circumstantial evidence of retaliation may include "evidence of suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Here, there is no dispute that Plaintiff engaged in a statutorily protected activity when he complained about racial harassment and he suffered the materially adverse action of termination. Plaintiff also argues that his receipt of written warnings, one of which involved probation, constituted materially adverse employment actions.

To the extent that Plaintiff is arguing that ostracism from his coworkers or Metzler's comments constitute materially adverse employment action – an argument that he does not make in his brief, but seems to imply in his statement of the facts – that argument is not successful. Ostracism may only rise to the level of an adverse employment action when an employer orders it and it causes material harm to plaintiff. *See, e.g., Parkins,* 163 F.3d at 1039 (summarizing cases).

Plaintiff does not allege that any ostracism by his co-workers was ordered by one of his supervisors, and having insults written on his time-card does not rise to the level of "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998); *see also Bell v. EPA*, 232 F.3d 546, 555 (7th Cir. 2000) (same).

Similarly, Metzler's actions (with the possible exception of the written warnings, addressed below) did not rise to the level of a materially adverse employment action. The Court recognizes that "[r]etaliatory harassment by co-workers or a supervisor can rise to this level [of a materially adverse action] if it is severe enough to cause a significant change in the plaintiff's employment status." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). However, "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996); *see also, e.g., Rhodes v. Ill. DOT*, 359 F.3d 498, 505 (7th Cir. 2004) (job reassignment, being marked absent in a manner inconsistent with company policy, being assigned uncomfortable and inconvenient tasks "constitute mere temporary inconveniences and do not rise to the level of an adverse employment action"); *Bell*, 232 F.3d at 554-55 ("numerous incidents of alleged retaliation, including demeaning assignments, verbal abuse, surveillance, diminished responsibilities, refusal to cooperate on job assignments, and placements in situations designed to result in failure" even in the aggregate, "do not rise to the level of actionable retaliation"); *Rabinovitz v. Pena*, 89 F.3d 482, 488 (7th Cir. 1996) (lower performance rating and workplace restrictions on plaintiff alone were not materially adverse employment actions); *cf. Knox v. Indiana*, 93 F.3d 1327, 1331, 1335 (7th Cir.1996) (a reasonable jury could find that a "relentless

campaign of fellow employee harassment" by multiple co-workers at the direction of a supervisor desiring to make the plaintiff's life "hell"was an adverse employment action). Metzler's comments and behavior during and after the investigation into Plaintiff's harassment claims, while possibly uncomfortable or annoying to Plaintiff, did not cause a change in Plaintiff's employment status to the level of hiring or failure to promote and therefore do not rise to the level of a materially adverse employment action. "Title VII does not set forth a general civility code for the American workplace and it does not protect an employee from trivial harms, petty slights, nor minor annoyances" such as those Plaintiff claims he was subjected to by Metzler. *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (quotations omitted). Accordingly, the only two adverse employment actions to be considered in relation to Plaintiff's claims of retaliation are his termination and the written warnings he received.

Defendant argues that the time between Plaintiff's complaints about racial harassment and his termination is too long and tenuous for his claims of retaliation to survive summary judgment. Although "suspicious timing may permit a plaintiff to survive summary judgment if there is other evidence that supports the inference of a causal link," *Culver v. Gorman & Co.*, 416 F.3d 540,546 (7th Cir. 2005) (citation omitted), "suspicious timing alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 687 (7th Cir. 2010) (quotation and citations omitted).

Without any other evidence supporting a link between the two occurrences, the several-month time lag between Plaintiff's complaint of racial harassment to his supervisor in March, 2007, or even the later complaint to human resources on April 18, 2007, and his August 3, 2007, termination is too great to support an inference of retaliation. *See Argyropoulos v. City of Alton*, 539

F.3d 724, 734 (7th Cir. 2008) ("The approximate seven-week interval between Argyropoulos's sexual harassment complaint and her subsequent arrest/termination does not represent that rare case where suspicious timing, without more, will carry the day."); *cf. Spiegla v. Hull*, 371 F.3d 928, 943 (7th Cir. 2004) (causation could be inferred with a mere four days between employee's protected speech and the adverse employment action).  Likewise, to the extent that being placed on probation or receiving written disciplinary action could constitute a significant change in employment status, which the Court does not here conclude, the length of time between his March or April complaints and the written warnings and probation on June 25, 2007, is still too great to create an inference of causation.

Plaintiff urges the Court to instead consider the much shorter length of time between his contacts to human resources assistant director Johansen via email on July 10, 2007, and phone call on July 31, 2007, and his termination on August 3, 2007.  Defendant argues that the complaints made on those dates were not complaints about racial harassment and were therefore not protected conduct, and that Kelsey and Metzler knew of Plaintiff's actual racial harassment complaints months before he was placed on probation for attendance issues or fired such that the later dates are inapplicable for inferring causation.

Even if Plaintiff repeated his complaints about racial harassment in the email or phone call, the repetition of his complaints, by itself, does not restart the clock for supporting an inference of termination.  *See, e.g., Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 859 (7th Cir. 2008).  However, Plaintiff also appears to be arguing that his protected conduct on the July dates was not his complaints about the original racial harassment but new complaints that he was being retaliated against by Metzler for making the original harassment claim.

In order for Plaintiff's complaints to be considered "protected conduct" for the purposes of his retaliation claim, he "must not only have a subjective (sincere, good faith) belief that he opposed an unlawful practice; his belief must also be objectively reasonable, which means that the complaint must involve discrimination that is prohibited by Title VII." *Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000). In other words, "[i]f a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable." *Id.* (citations omitted).

In this case, no reasonable jury could conclude that the new complaints made by Plaintiff in July 2007 demonstrate that Plaintiff had a reasonable belief that he was complaining about retaliation as protected by Title VII. In the email he sent on July 10, 2007, Plaintiff wrote, "[I] would like to report incidents that I feel are forms of unjust actions against me by my supervisor Eric Metzler." The email includes complaints about the conversation with Metzler in which Metzler made the comment about Plaintiff's need for thicker skin. As described above, there is no indication that this comment contained any racial animus, and therefore was not proscribed by Title VII. The email went on to reference non-specific complaints of "some form of harassment," again with no reference to any racial or sexual content that would make it actionable under Title VII, and included complaints about the three employee warnings Plaintiff received in June. He went into detail about why he believed his absences were authorized and the employee warnings were unwarranted, but included no detail or statement indicating that he believed the warnings were received in retaliation for his complaints of racial harassment. Plaintiff's after-the-fact descriptions of the email do not create a statement of material fact regarding whether Plaintiff believed he was complaining of unlawful retaliation therein.

Similarly, Johansen's report of Plaintiff's July 31, 2007, phone call includes a litany of general complaints about other employees, students, and supervisors. The only indication that Plaintiff was complaining about anything that could be considered discrimination in violation of Title VII was a reference to Plaintiff's reporting that he "has had to deal with a bunch of 'crap'" since March, when the original claim of racial harassment was made. However, the individual incidents that he complains of, including an altercation with another employee and comments from Metzler about Plaintiff's failure to fulfill some job responsibilities, are neither harassing in and of themselves nor the type of adverse employment action that would be actionable retaliation under Title VII. As described above, "Title VII does not set forth a general civility code for the American workplace and it does not protect an employee from trivial harms, petty slights, nor minor annoyances" of the type Plaintiff was complaining about. *Stephens*, 569 F.3d at 790 (quotations omitted).

Although in his brief Plaintiff heavily relies on the direct method regarding his claim for race-based retaliation, he may also attempt to establish his claim of retaliation using the indirect burden-shifting method. Under the indirect method, Plaintiff must show that "(1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Tomanovich*, 457 F.3d at 663 (quoting *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)) (quotation marks omitted). If Plaintiff establishes this prima facie case of retaliation, then the burden shifts to the defendant to articulate a nondiscriminatory reason for its action. *Id.* If Defendant meets its burden, then in order to avoid summary judgment, Plaintiff must show that a genuine issue of material fact exists as to whether the

defendant's proffered reason was pretextual.  *Id.*

Defendant argues that even assuming Plaintiff can meet the first and third elements, he cannot show that he met Defendant's legitimate employment expectations or that he was treated less favorably than similarly situated employees.

To determine whether Plaintiff met Defendant's legitimate expectations,  "[t]he proper inquiry mandates looking at [the plaintiff's] job performance through the eyes of h[is]  supervisor at the time of h[is] . . . termination."  *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Defendant indicated to Plaintiff that he was terminated due to absenteeism and poor job performance.  In his deposition testimony, Plaintiff acknowledged that he was aware of his employer's expectation that instructors be on time and present for their students and admits that he knew he had been placed on probation for attendance reasons.  He also acknowledged that he knew that if he did not follow the guidelines of probation, he could be terminated, and that he continued to take time off from work after being on probation for attendance.  Plaintiff does not proffer any evidence or argument that his absences had not interfered with his job performance and ability to complete his work as a road instructor on a full-time basis.  There is no genuine issue of material fact regarding whether Plaintiff was meeting Defendant's legitimate job expectations with regard to attendance.

Furthermore, Plaintiff has not identified any similarly situated employee who was not given warnings or terminated for similar attendance issues.  A similarly situated employee need not be identical, but the Plaintiff mush show "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."

*Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000) (citations omitted); *see also Grayson v. O'Neill*, 308 F.3d 808, 819 (7th Cir. 2002) (citing cases and concluding, "To meet his burden of demonstrating that another employee is 'similarly situated,' a plaintiff must demonstrate that there is someone who is directly comparable to him in all material respects."). Plaintiff's brief refers to another employee, Kim Beckom, but he only argues that Beckom was "treated more favorably regarding attendance issues," and the documents included from his personnel file do not include attendance records or otherwise indicate how much work Beckom missed. Beckom is the only employee who Plaintiff mentions with regard to attendance issues, but Plaintiff has not demonstrated that Beckom was a similarly-situated employee suitable for comparison.

Furthermore, Plaintiff also fails at the next stage of the analysis. Defendant claimed the non-discriminatory reason of poor attendance for Plaintiff's termination and Harper has failed to present a genuine issue of fact about either the number of days he missed or whether his lack of attendance affected his job performance. He argues that his termination was unfair and that he had good reasons or approval for some of his days off, but he fails to "make the requisite showing by providing evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 888-889 (7th Cir. 2001) (quotations omitted).

Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

## C.      State Law Retaliatory Discharge

Plaintiff has alleged that he was terminated in part because of his filing of a worker's compensation claim and is therefore entitled to compensation under state law. Defendant argues that

Plaintiff never filed a claim with a state workers' compensation commission and as a result did not participate in a statutorily protected activity.

In Indiana, "if there is no definite or ascertainable term of employment, then the employment is at-will, and is presumptively terminable at any time, with or without cause." *Courtee v. Lafayette Neighborhood Hous. Servs., Inc.*, 792 N.E.2d 907, 911 (Ind. Ct. App. 2003) (citation omitted). The Indiana Supreme Court carved out an exception to the general at-will employment rule in *Frampton v. Cent. Ind. Gas Co.*, 297 N.E. 2d 425 (Ind. 1973), creating a cause of action for termination in retaliation for filing a worker's compensation claim.

In order "to survive a motion for summary judgment in a *Frampton* case, an employee must show more than a filing of a worker's compensation claim and the discharge itself," but in addition "must present evidence that directly or indirectly supplies the necessary inference of causation between the filing of a worker's compensation claim and the termination." *Purdy v. Wright Tree Serv.*, 835 N.E.2d 209, 212-213 (Ind. Ct. App. 2005) (citations omitted). In this case, Plaintiff has failed to show that he ever engaged in statutorily protected activity by filing a worker's compensation claim. Plaintiff himself admits that he never filed a workers' compensation claim with the Indiana Workman's Compensation Commission or a comparable agency or board and does not argue that he pursued a worker's compensation claim. At his deposition, Plaintiff testified, "I wasn't trying to get workman [sic] compensation benefits." Instead, he argues that the mere filling out of a first report of injury was one of the reasons behind his termination, and that the public policy underlying the creation of the *Frampton* exception to at-will employment should apply to his situation. In particular, he emphasizes the following language in the court's opinion: "If employers are permitted to penalize employees for filing workmen's compensation claims, a most important

public policy will be undermined." *Frampton*, 297 N.E.2d at 427.

However, "Indiana courts have narrowly construed the public policy exception recognized in *Frampton*," and "[a] successful litigant must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory right or the fulfillment of a statutorily imposed duty." *Smith v. Elec. Sys. Div. of Bristol Corp.*, 557 N.E.2d 711, 712 (Ind. Ct. App. 1990) (citation omitted). In this case, Plaintiff has failed to show that he exercised any statutory right. In addition, he presents no evidence to support any inference that his termination had anything whatsoever to do with worker's compensation. Accordingly, there is no genuine dispute of material fact on this issue and Defendant will be awarded summary judgment on Count V.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** the Defendant's Motion for Summary Judgment [DE 34]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant C.R. England, Inc., and against Plaintiff Kenneth Harper as to all of his claims.

SO ORDERED this 3rd day of August, 2011.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record